THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Terry Glenn Meeks, Jr., | Civil Action No.: 8-09-3279-MBS-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Larry W. Powers, Warden, Spartanburg County Detention Facility; and Capt. T. Speller, Captain, Spartanburg County Detention Facility, | |
| Defendants. | |

The Plaintiff, a pro se prisoner, filed this action alleging civil rights violations pursuant to 42 U.S.C. § 1983 on December 22, 2009. Before the court are the Plaintiff's Motion for Summary Judgment[1] (Dkt. #19) and the Defendants' Motion for Summary Judgment (Dkt. # 25).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On March 12, 2010, the Plaintiff filed a Motion for Summary Judgment. (Dkt. # 19.) On April 26, 2010, the Defendants also filed a Motion for Summary Judgment in which they included a response to the Plaintiff's Motion for Summary Judgment. (Dkt. # 25.) On April 27, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the Defendants' motion. On June 18, 2010, the Plaintiff filed a response opposing the Defendants' Summary Judgment Motion. (Dkt. # 39.)

---

[1] The Plaintiff captioned this document as a "Memorandum in Opposition of the Defendants' Answer and Defense of Plaintiff's Complaint, Motion for Summary Judgment."

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient

to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**FACTS**

At the time the Plaintiff filed this action, he was a pretrial detainee at the Spartanburg County Detention Facility ("SCDF").[2] In his complaint, the Plaintiff alleges his due process rights were violated and he was subjected to cruel and unusual punishment while at SCDF. (Compl. at 2.) The Plaintiff alleges that beginning with his incarceration at the SCDF on April 20, 2009, he was never disruptive or disorderly. (Compl. at 3.) The Plaintiff alleges that on November 5, 2009, he was accused of "an incident" by another inmate and he was moved from the general population into Pod 5, which he describes as a lockdown unit used for disciplinary. *Id*. He further alleges that on November 6th, the Defendant Captain Speller had him moved to a unit within Pod 5 know as "Behind the Glass" which he describes as an ultra lockdown unit. (Compl. at 3.) The Plaintiff states that inmates "Behind the Glass" are housed in solitary cells and allowed to mail only two letters per week and only one ten minute phone call on Sundays. He states that these inmates are not allowed to keep any mail, magazines, books, or newspapers in their cells and are not given any outdoor recreation time. (Compl. at 4.)

The Plaintiff states that on November 17th and November 24th, he submitted grievances to Capt. Speller asking why he was placed "Behind the Glass," but he received no response to either grievance. (Compl. at 4-5.) He states on November 27th, he sent a request to staff form to Officer Haggins asking when a disciplinary hearing would be held, but he again received no response. (Compl. at 4.) He states on December 1st, he sent a

---

[2] The Plaintiff was incarcerated at the SCDF from April 20, 2009, through February 8, 2010. (Defs.' Mem. Supp. Summ. J. Mot. Attachs. - Larry W. Powers Aff. ¶ 3; Teresa Speller Aff. ¶ 3). The Plaintiff is currently incarcerated at the Evans Correctional Institution.

3

grievance to the Defendant Warden Larry Powers and he received an unsigned response. *Id.* The Plaintiff alleges that on December 7th, he was released from "Behind the Glass" and placed back into Pod 5.[3]

The Plaintiff is seeking a transfer from Pod 5 back into the general population in the SCDF. (Compl. at 11.) He also is seeking to require the SCDF to include a carbon copy in its grievance forms and that the SCDF review the files of inmates who are currently involved in a disciplinary proceeding to ensure that their rights are not being violated. *Id.* Finally, the Plaintiff is seeking nominal and punitive damages. (Compl. at 12.)

The Defendants contend the following in regard to the Plaintiff's claims. On November 6, 2009, the Plaintiff was involved in an incident with one of his three cell mates, Jacob Page. Page stated that the Plaintiff had beaten him repeatedly over a two week period and it was noted that Page had numerous bruises on his torso. Based upon this incident, the Plaintiff was moved to Pod 5. (Defs.' mem. Supp. Summ. J. Mot. - Teresa Speller Aff. ¶ 6 & Ex. 2 .) On December 7, 2009, the Plaintiff was transferred from Pod 5 to Pod 6, but he was moved back to Pod 5 the same day based on safety and security considerations when he was involved in another altercation. (*Id.* ¶ 7 & Ex. 3.)[4] The Plaintiff remained in Pod 5 until January 8, 2010, when he was moved back to Pod 6. (*Id*. ¶ 8 & Ex. 4.) On January 30, 2010, the Plaintiff had a heated verbal altercation with a cell mate and as "a result of his continued inability to maintain civil relationships with other inmates," he was again placed in Pod 5 on February 2, 2010. The plaintiff was discharged from the

---

[3]When the plaintiff filed this action on December 22, 2009, he was still being housed in Pod 5 at the SCDF. As noted below, the Plaintiff has since been transferred out the SCDF.

[4]The Defendants erroneously state the Plaintiff was moved from Pod 5 to Pod 6 on December 17th. (Defs.' Mem. Supp. Summ. J. Mot. at 2 & Speller Aff. ¶ 7.) However, the record establishes the date was December 7th. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 4 Speller Aff. at 2.)

SCDF on February 8, 2010. (*Id.* ¶ 9; Larry W. Powers Aff. ¶ 6.) In summary, the Plaintiff spent approximately eight weeks out of the nearly ten months he spent at the SCDF in Pod 5.

## DISCUSSION[5]

The Plaintiff alleges he was held "Behind the Glass" in Pod 5 for 31 days and in a solitary cell in Pod 5 for an additional 34 days from November 5, 2009, through January 8, 2010. (Pl.'s Mem. Opp. Summ. J. Mot. - Attach. # 1 -Pl.'s Aff. ¶ 7.) The Plaintiff alleges the Defendants violated his due process rights by failing to follow the SCDF policies and failing to provide him with a disciplinary hearing after placing him in administrative segregation, Pod 5.

"[U]nder the Due Process Clause, a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law . . . [However,] the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment. . . . Thus, if a particular condition or restriction is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish,* 441 U.S. 535-540 (1979).

---

[5]Initially, the undersigned notes that some of the relief requested by the Plaintiff (i.e transfer out of Pod 5) is now moot as he is no longer incarcerated at the SCDF. *See Rendelman v. Rouse,* 569 F.3d 182, 186 (4th Cir.2009) (holding "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."). Further, to the extent the Plaintiff is attempting to seek relief for any fellow inmates (i.e. review of pending disciplinary proceedings), this relief must also be denied. The Plaintiff cannot bring any claims on behalf of other inmates. *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that a prisoner, proceeding pro se, cannot represent other prisoners in a class action). *See also Hummer v. Dalton*, 657 F.2d 621, 623 n. 2, 625-626 (4th Cir. 1981) (suit is "confined to redress for violation of his own personal rights and not one by him as a knight-errant for all prisoners").

"[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537. The government must be able to take steps to maintain security and order at the penal institutions. *Id*. at 540. Moreover, the Supreme Court emphasized in *Bell* that decisions about such matters fall "'peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Id.* at 540-41 n. 23.

Accordingly, "[t]o establish that a particular condition or restriction of his confinement is constitutionally impermissible 'punishment,' the pretrial detainee must show either that it was (1) imposed with an expressed intent to punish *or* (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Bell*, 441 U.S. at 538-40 (emphasis added). Moreover, a pretrial detainee must show that the challenged condition imposed restrictions of sufficient severity to implicate the Constitution. *See Bell,* 441 U.S. at 539 n. 21 ("'There is, of course, a de minimis level of imposition with which the Constitution is not concerned.'" (internal quotation marks and citation omitted). No such evidence has been presented in this case.

The Plaintiff has asserted in his response in opposition to the Defendants' summary judgment motion that he is not concerned with being placed initially in Pod 5, rather he alleges that his due process rights were violated by not receiving a disciplinary hearing. (Pl.'s Mem. Opp. Summ. J. Mot. at. 7.) The Plaintiff has come forward with no evidence to support his allegation that Defendants placed the Plaintiff in Pod 5 or "Behind the Glass" in order to punish him. The record does show that the Plaintiff was originally transferred pending disciplinary action. (Pl.'s Mem. Opp. Summ. J. Mot. Attach. # 2; Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 - Speller Aff. Ex. at 8.) However, the Plaintiff also acknowledges

that he was not ever charged with any disciplinary offenses. The Defendants have submitted sworn affidavits denying any intent to punish the Plaintiff and instead explaining that the Plaintiff was placed in Pod 5 and "Behind the Glass" for legitimate security concerns. *Miramontes v. Chief of Dep't of Corrections*, 86 Fed .Appx. 325, 326 (9th Cir. 2004)(holding the plaintiff did not have a right to a due process hearing when he was placed in administrative segregation for security reasons rather than as punishment for an alleged violation of prison rules). *See also Alexander v. Frank*, 1992 WL 149679 at * 1 (9th Cir. 1992)(unpublished)(holding pretrial detainee not denied due process or equal protection or subjected to cruel and unusual punishment when he was placed in maximum security/maximum custody due to specific factors based on a legitimate government purpose of ensuring the safety and security of the prison facility.). It is not at all unreasonable to expect the officials of a detention facility to wish to remove the Plaintiff from the general prison population when the possibility arose that he was involved in a recent assault on another inmate during the investigation of the incident. Reasonable prison security measures would require this action. Accordingly, the undersigned finds the Defendants should be granted summary judgment.

The Defendants also argue that they are entitled to qualified immunity, and the undersigned agrees. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained when qualified immunity is appropriate:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d 295, 298 (4th Cir. 1992) (citations omitted).

Here, it does not appear at the time of the acts complained of in the Complaint that the law was sufficiently clear to apprise the Defendants that maintaining the Plaintiff in administrative segregation throughout the period in question was not sufficiently related to the legitimate governmental objective of maintaining good order and discipline within the SCDF or that it was excessive in light of that objective keeping in mind that the decisions of prison officials in this regard are to be given a great deal of latitude.

Some courts in other jurisdictions have held that placement in solitary confinement for 65 days constitutes more than a de minimis restriction on a pretrial detainee's liberty. *See Stevenson v. Carroll,* 495 F.3d 62, 69 (3d Cir. 2007) (holding "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the SHU [Special Housing Unit] without explanation or review of their confinement."); *Zarnes v. Rhodes*, 64 F.3d 285, 291 (7th Cir. 1995) (holding "[t]he state cannot place a detainee in segregation for no reason. . . ."). However, in *Gannon v. McDaniels*, 2008 WL 5262693 (W.D.Va. 2008) (unpublished), the court held the plaintiff did not allege facts indicating that retention in administrative segregation for four months for unidentified administrative reasons was more than a de minimis inconvenience and did not constitute a deprivation of due process rights. As the authority is conflicting and there is contrary authority from within this Circuit which supports a finding that such segregation is merely a de minimis inconvenience, *Gannon*,

8

the undersigned finds the Defendants are entitled to qualified immunity. *See McVey v. Stacyl*, 157 F.3d 271, 277 (4th Cir.1998) ("When determining whether a reasonable officer would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues.").

Furthermore, although it does not appear that Plaintiff received a disciplinary hearing in connection with the November 5th incident which resulted in his initial placement in Pod 5, under the circumstances, the undersigned cannot say that the Defendants violated clearly established law by placing the Plaintiff in administrative segregation. "[E]ven if the acts of defendants constituted punishment under *Bell*, . . . it was not clearly established how one ought to differentiate between administrative action designed to assure the safe running of the facility and punitive action." *Rapier v. Harris*, 172 F.3d 999, 1002 n. 2 (7th Cir.1999). Accordingly, based on the foregoing, the undersigned finds the Defendants are also entitled to summary judgment on the basis of qualified immunity.[6]

Finally, to the extent the Plaintiff is complaining that the Defendants have violated their own policy or procedure, these claims do not amount to constitutional violations. *See United States v. Caceres,* 440 U.S. 741 (1978).

## CONCLUSION

Based on the foregoing, it is recommended that the Plaintiff's Motion for Summary Judgment (Dkt. # 19) be DENIED; and the Defendants' Motion for Summary Judgment (Dkt. # 25) be GRANTED; and the Complaint be Dismissed with Prejudice.

---

[6]Additionally, the Plaintiff himself describes the Defendants' alleged improper conduct of failing to provide him with a disciplinary hearing as having being committed with "negligence and not in good faith." (Pl.'s Mem. Opp. Summ. J. Mot. at 9.) That is not the standard for liability for a constitutional claim being asserted under § 1983. Rather, the standard is one of deliberate indifference. *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999) (holding "[d]eliberate indifference is a very high standard-a showing of mere negligence will not meet it.").

IT IS SO RECOMMENDED.

             s/Bruce Howe Hendricks
             United States Magistrate Judge

October 7, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**